IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANKLIN INTERIORS, INC., | ) | No.   2:20-cv-1423 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PETER M. WESOLOSKY and DIRTT | ) | |
| ENVIRONMENTAL SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT IN CIVIL ACTION

NOW COMES Plaintiff, Franklin Interiors, Inc., by and through its attorneys,
Lawrence J. Maiello, Esquire, Steven P. Engel, Esquire, Gary H. Dadamo, Esquire and
Maiello, Brungo & Maiello, LLP and files its Complaint in Civil Action against
Defendants, Peter M. Wesolosky and DIRTT Environmental Solutions, Inc., and in support
thereof avers as follows:

### PARTIES

1.     Plaintiff, Franklin Interiors, Inc. ("Franklin") is a Pennsylvania corporation
regularly conducting business in Allegheny County with a principal place of business
located at Suite 600, 2740 Smallman Street, Pittsburgh, Pennsylvania, 15222-4720.

1

2.      Defendant, Peter M. Wesolosky (hereinafter "Wesolosky"), is an adult individual residing at 2537 Clubhouse Drive, Franklin Park, Pennsylvania, 15090.

3.      Defendant, DIRTT Environmental Solutions, Inc. ("DIRTT"), is foreign corporation, which has an office or principal place of business located at 7303 30th Street SE, Calgary, Alberta T2C 1N6.

## VENUE AND JURISDICTION

4.      Venue is proper in the United States District for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2), because the events and transactions giving rise to the claims occurred in whole or in part in the Western District of Pennsylvania.

5.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 based upon the diversity of citizenship of the parties and because the amount in controversy exceeds $75,000.00.

## FACTUAL BACKGROUND

6.      Franklin is a leading supplier of products and services in the highly competitive office product, commercial build-out and modular and architectural wall industry in the Western Pennsylvania and West Virginia region.

7.      During the course of and as part of its business, Franklin has developed certain confidential and proprietary information, including, but not limited to, sales methods and pricing, proposals, customer lists and information, prospective customer lists

315526,10765.0

and information, technical and specification information, planning data, sales methods, financial information and business systems data, compilations of information, records and specifications that are highly important to Franklin and that have allowed it to grow and remain competitive in the highly competitive industries in which it conducts its business.

8. Defendant Wesolosky is a highly experienced and knowledgeable former Account Executive of Franklin, who for the last several years has served as Franklin's lead salesman for the sale of modular and architectural wall products.

9. Upon information and belief, at all times material hereto, Defendant DIRTT also operated as a supplier of products and services in the highly competitive commercial build-out and modular and architectural wall industry and is/was a direct competitor of Franklin.

10. On or about November 5, 2010, Wesolosky was hired by Franklin as Senior Interior Designer/Project Manager.

11. On or about October 10, 2011, Wesolosky was offered and accepted a sales position or a position as an Account Executive with Franklin.

12. At the time that Wesolosky was offered the position as an Account Executive and as consideration for that offer/promotion, Wesolosky was required to execute a written Employment Agreement (hereinafter the "Agreement"). A true and correct of the Agreement executed by Wesolosky on October 10, 2011 is attached hereto and incorporated herein by reference as **Exhibit "1."**

13. In consideration for the offer his promotion of his employment with Franklin, Wesolosky agreed to abide by the mutual promises and covenants set forth in the Agreement (*See* Exhibit "1").

315526,10765.0

14. Paragraph 2 of the Agreement contains the following express acknowledgment from Wesolosky that, as part of his employment and position, he would be provided with access to and become familiar with confidential information of Franklin:

> During my employment, I understand that I will have access to and become familiar with certain CONFIDENTIAL INFORMATION that has been developed through the efforts of investment of Franklin Interiors, which is of significant value to the continuation of Franklin Interiors' business, and which is not of common knowledge or easily discoverable or easily compiled from an independent source.
>
> This CONFIDENTIAL INFORMATION includes various trade secrets, consisting of technical, financial and business information of Franklin Interiors of a confidential and proprietary character, including but not limited to sales methods and pricing, proposals, customer lists and information, and prospective customer lists and information, technical and specification information, planning data, sales methods, financial information and business systems data, compilations of information, records and specifications, and all other concerns of Franklin Interiors which are owned by Franklin Interiors and which are regularly used in the operation of Franklin Interiors' business.

(See Exhibit "1," ¶ 2).

15. Due to the value of the confidential information that Wesolosky was provided with access to by Franklin during the course of his employment and the fact that information could place Franklin at a distinct disadvantage in its business if it was disclosed to the public or Franklin's competitors, Paragraph 2 of the Agreement also provides as follows:

> I agree that I will not disclose any of this CONFIDENTIAL INFORMATION, directly or indirectly, nor use it in any way during the period of my employment or at any time thereafter, except as specifically authorized and directed by Franklin Interiors in the course of my employment.

4

(*Id.*)

16.    In order to protect the confidential information and Franklin's relationships with its customers, the Agreement also requires Wesolosky to agree "[t]o not engage in any business activity in conflict with the business interests of Franklin Interiors", and contains the following express agreement by Wesolosky not to engage in any "competing activity" with Franklin during the course of his employment and for a two-year period following the termination of his employment:

> 3. I agree that, for a period of 24 months after termination of my employment with Franklin Interiors I will not directly or indirectly, whether as principal, agent, officer, director, employee, consultant or otherwise, engage in a COMPETING ACTIVITY.
>
> \*        \*        \*
>
> I agree that this restriction is necessary to protect: (a) Franklin Interiors; relationships with its customers; (b) any confidential and trade secret information which was developed and/or acquired by Franklin Interiors through its efforts and investments; and (c) Franklin Interiors' interest in customer good will which is of continuing importance to its business.

(*See* Exhibit "1," ¶¶ 1, 3).

17.    The Agreement also specifically defined what was considered "Competing Activity", providing as follows:

> ***"COMPETING ACTIVITY" includes any work or activity which is competitive with or similar to any product, process or service of Franklin Interiors and any of its affiliated operations and/or subsidiaries, including but not limited to the sale and delivery of office furniture, flooring and furniture or flooring management services which are delivered by a furniture or flooring distributer, dealer, retailer, manufacturer or independent service provider***

> *which are similar or related to those provided by or under the development of Franklin Interiors.*
>
> *"COMPETING ACTIVITY" includes, but is not limited to, performing the type of work Franklin Interiors and any of its affiliated operations and/or subsidiaries provides to its customers under any service contract, during the period that any such service contract is in effect.*

(*See* ¶3 of Exhibit "1")(emphasis in original).

18.    Pursuant to Paragraph 4 of the Agreement, Wesolosky also agreed that the restrictions contained in the Agreement, including the provisions referenced above "[a]re reasonable and necessary to protect the legitimate interests of [Franklin] and that any violations of these Sections will result in irreparable injury to [Franklin]." (*See* ¶4 of Exhibit "1").

19.    Pursuant to Paragraph 5 of the Agreement, Wesolosky also agreed that the cost and consequences of any violation of the terms the Agreement were not capable of being fully compensated by monetary damages, when he agreed as follows:

> I agree that the cost and consequences of any violation of this Agreement, including but not limited to interference with any of Franklin Interiors['] customer relationships, in unascertainable and is not capable of being fully compensated by money damages. I agree that the Company shall be entitled to preliminary and permanent injunctive relief, without the necessity of proving actual damages, as well as an equitable accounting of all earnings, profits, and other benefits arising from the violation of this Agreement which rights shall be cumulative and in addition to any other rights and remedies to which the company may be entitled.

(*See* ¶5 of Exhibit "1").

315526,10765.0

20.     As an Account Executive for Franklin, Wesolosky was responsible for the following:

    a.  Maintaining knowledge of the products that are offered by Franklin and Franklin's service capabilities, as well as those of competitors;

    b.  Developing and implementing sales action plans to grow Franklin's business within a market or territory through successful utilization of effective networking, direct mailing, prospecting and qualifying;

    c.  Achieving team and/or individual sales and profit objectives relating to products and services through development of new and existing accounts;

    d.  Developing customer contacts at all levels;

    e.  Developing networking contacts to obtain leads and stay abreast of market opportunities;

    f.  Researching and communicating to team members and management, regarding market information such as business opportunities, customer perceptions and competitive issues;

    g.  Conducting, planning, scheduling and follow-up activities to maximize productivity of sales calls;

    h.  Recommending and implementing actions to increase Franklin's competitive advantage;

    i.  Developing proposals;

    j.  Closing sales;

k.  Obtaining and conveying information from clients to facilitate the order processing;

l.  Processing the orders of customers;

m.  Coordinating the delivery and installation of products that were ordered by Franklin's customers;

n.  Invoicing of products and services that were ordered by Franklin's customers;

o.  Obtaining future business for Franklin by maintaining optimal customer satisfaction through the delegation of order fulfillment and project coordination activities to the maximum extent possible;

p.  Training and facilitating the learning of new team members;

q.  Developing productive relationships with primary vendor personnel;

r.  Preparing timely reports on sales forecasts, project status, expenses, customer data and information requests;

s.  Attending and conducting regular meetings with the sales team to discuss progress against objectives, communicate project status, and maximize the effectiveness of sales calls.

21.  While Wesolosky was employed by Franklin, Franklin entrusted Wesolosky with certain confidential and proprietary business information and trade secrets of Franklin including, but not limited to, the following (hereinafter the "Confidential Information"):

a.  Client lists;

b. Client contact information;

c. Vendor and supplier contact information;

d. Customer lists and information;

e. Prospective customer lists and information;

f. Franklin's sales and marketing plans and efforts.

g. Sales methods and tactics of Franklin;

h. Pricing information of Franklin and its suppliers;

i. Franklin's cost structure, including costs of goods sold, overhead costs and discount and rebate programs with vendors;

j. Prior and pending proposals and bids,

k. Technical and specification information and other records relating to Franklin's and its supplier's products,

l. Planning data;

m. Financial information and business systems data, compilations of information; and

n. Other technical, financial and business information of Franklin Interiors of a confidential and proprietary character.

22. On or about March 1, 2018, Wesolosky was given the title of "Vice President of Key Accounts" or "Vice President of Corporate Accounts", which signified that he provided with the opportunity to service and solicit sales from higher-value accounts, clients and prospective clients of Franklin.

315526,10765.0

23.     As a Franklin Account Executive and to an equal or ever greater extent after he was given the title of Vice President of Key/Corporate Accounts, Wesolosky was primarily responsible for the sales and marketing of modular and architectural wall products for Franklin in the Western Pennsylvania and West Virginia regions and on major corporate accounts on projects in other parts of the United States..

24.     As a Franklin Account Executive and to an equal or ever greater extent after he was given the title of Vice President of Key/Corporate Accounts, Wesolosky oversaw Franklin employees and had constant access to Confidential Information, including highly sensitive and valuable company information involving Franklin's sales and marketing efforts, and Plaintiff's cost structure for the modular and architectural wall products that were sold by Franklin such as costs of goods sold, overhead costs and discount and rebate programs with vendors.

25.     On or about September 4, 2020, Wesolosky voluntarily terminated his employment with Franklin.

26.     At the time of his termination from employment with Franklin, and as Franklin's Account Executive and the Vice President of Key/Corporate Accounts, Wesolosky was responsible for the sales and marketing of modular and architectural wall products for Franklin in Western Pennsylvania and West Virginia and on major corporate accounts for projects throughout the United States.

27.     At the time that Wesolosky notified Franklin of the termination of employment with Franklin, Wesolosky neither discussed, nor did Franklin waive the Non-Competition Provision contained the Agreement or otherwise agree that Wesolosky

10

could compete with Franklin during the subsequent two year period of time (9/04/20 – 9/04/22) following the termination of his employment with Franklin.

28.     Upon information and belief, before Wesolosky's termination of employment with Plaintiff, Wesolosky accepted a position as a territorial sales manager for Defendant DIRTT, a direct competitor of Franklin, in direct violation of his contractual covenants with Franklin and he has solicited or intends to solicit business from current, former and prospect customers of Franklin in the Tri-State region for the benefit of Defendant DIRTT.

29.     On September 3, 2020, Franklin's counsel served a letter upon Defendant Wesolosky, which: (1) reminded him of the terms of his Employment Agreement, including, specifically, the Non-compete provisions; (2) advised Wesolosky that Franklin would not waive the Non-Competition Provision contained the Agreement or otherwise agree that Wesolosky could compete with Franklin during the subsequent two year period of time (9/04/20 – 9/04/22) following the termination of his employment with Franklin; and (3) demanded that he cease and desist with his proposed plan to go to work for Defendant DIRTT.

30.     On September 3, 2020, Franklin counsel also served a letter upon Defendant DIRTT, which: (1) advised Defendant DIRTT of the terms of Defendant Wesolosky's Employment Agreement, including, specifically, the Non-compete provisions; (2) advised DIRTT that Franklin would not waive the Non-Competition Provision contained the Agreement or otherwise agree that Wesolosky could compete with Franklin during the subsequent two year period of time (9/04/20 – 9/04/22)

11

following the termination of his employment with Franklin and (3) demanded that Defendant DIRTT cease and desist with its attempts to hire Defendant Wesolosky.

31.     Despite his receipt of Franklin's September 3, 2020 letter and being advised that Franklin would not waive the Non-Competition Provision contained the Agreement or otherwise agree that Wesolosky could compete with Franklin during the subsequent two year period of time (9/04/20 – 9/04/22) following the termination of his employment with Franklin, Wesolosky breached the terms of the Agreement by accepting a position with DIRTT and/or by directly competing with Franklin.

32.     Despite its receipt of Franklin's September 3, 2020 letter and being advised that Franklin would not waive the Non-Competition Provision contained the Agreement or otherwise agree that Wesolosky could compete with Franklin during the subsequent two year period of time (9/04/20 – 9/04/22) following the termination of his employment with Franklin, Defendant DIRTT tortiously interfered with the Employment Agreement between Franklin and Wesolosky and Franklin's  existing and prospective contractual relations with its customers by hiring Wesolosky and/or by directing him to compete with Franklin, to solicit business from Franklin's existing or potential customers and/or to persuade Franklin's customers to cancel existing orders and place new orders for the same or similar product with Defendant DIRTT.

33.     The unlawful, extracontractual and tortious conduct of Defendant DIRTT, in concert with Defendant Wesolosky, has caused and threatens to cause imminent, irreparable harm to Franklin for which there is no remedy at law.

12

## COUNT I

### CLAIM FOR DECLARATORY RELIEF

*Franklin Interiors, Inc. v. Peter M. Wesolosky and*
*DIRTT Environmental Solutions Inc.*

34.     Franklin hereby incorporates the allegations set forth in Paragraphs 1 through 33 of this Complaint as if the same were set forth more fully at length herein.

35.     Based on the facts, conditions and circumstances hereinafter set out, there is now existing between the parties an actual bona fide and justiciable controversy as to which Franklin is entitled to have a declaration of its rights.

36.     On or about October 10, 2011, Franklin and Defendant Wesolosky entered into a written contract or employment agreement (hereinafter referred to as "the Agreement"), under which Franklin agreed to employ and pay Wesolosky in return for Wesolosky's agreement to abide by the mutual promises and covenants set forth in the terms of the Agreement.

37.     As part of the terms of the Non-Competition and Confidentiality provisions in the Agreement, Wesolosky expressly agreed that:

   a.   for a period of two-years immediately following the termination of the Agreement, Wesolosky would not directly or indirectly compete with Franklin;

   b.   for a period of two -years immediately following the termination of the Agreement, Wesolosky would not disclose to any person, firm or corporation any Confidential Information of Franklin or any other proprietary information relating to the practice, operations or business of Franklin.

315526,10765.0

(*See* ¶¶2-3 of Exhibit "1")

38.     Following Wesolosky's voluntary termination of his employment with Franklin on September 4, 2020, Wesolosky breached the terms of the Agreement by accepting a position with Defendant DIRTT, and/or by soliciting business from clients or potential customers of Franklin on behalf of DIRTT.

39.     Upon information and belief, Defendant Wesolosky also breached the covenant not to compete by the following actions and conduct:

a.  Engaging in or contributing his knowledge and abilities to a business or entity in competition with Plaintiff in the Tri-state region; and

b.  Disclosing Confidential Information to third parties, including DIRTT, thereby placing Franklin at a competitive disadvantage.

40.     Upon information and belief, Wesolosky and Defendant DIRTT contend that Defendant DIRTT is not a competitor of Franklin and they therefore deny that Wesolosky breached the terms of the Agreement by accepting a position with DIRTT or by soliciting business on its behalf.

41.     Franklin and Defendants Wesolosky and DIRTT have been unable to agree as to their respective rights under the Agreement with respect to whether the Agreement is enforceable and/or with respect to whether Wesolosky is in breach of the terms of the Agreement by: (1) accepting a position with DIRTT and/or soliciting work from current or potential customers of Franklin; and/or (2) disclosing or sharing Confidential Information of Franklin with Defendant DIRTT.

42.     Unless an adjudication of the rights of the parties is made by the Court at this time, there is a very real possibility that Wesolosky will continue to work for DIRTT

14

or to solicit work and business from customers or potential customers of Franklin or on behalf of DIRTT and/or (2) disclose or share Confidential Information of Franklin with Defendant DIRTT in violation of the terms of the Agreement.

43. Franklin has no adequate remedy at law, because only a judgment declaring that the Agreement is valid and enforceable and that Wesolosky is in breach of the Agreement provide will provide Franklin with the relief required under the circumstances.

44. As a result, Franklin seeks and is entitled to a declaration or determination from this Court with respect to: (1) the respective rights of the parties under the Agreement; (2) whether the Agreement and its Non-Competition and Confidentiality provisions are valid and enforceable; (3) whether Wesolosky breached the terms of the Agreement by: (a) accepting a position with DIRTT and/or soliciting work from current or potential customers of Franklin; and/or (b) disclosing or sharing Confidential Information of Franklin with Defendant DIRTT.

WHEREFORE, Plaintiff, Franklin Interiors, Inc., respectfully requests that this Honorable Court issue an appropriate Order in its favor and against Defendants, Peter M. Wesolosky and DIRTT Environmental Solutions, Inc., under the Declaratory Judgments Act, 42 Pa.C.S. §§7531, et seq:

(1) Declaring that the Agreement and its Non-Competition and Confidentiality provisions are valid and enforceable;

(2) Declaring that Wesolosky breached the terms of the Agreement by: (a) accepting a position with DIRTT and/or soliciting work from current or potential customers of Franklin; and/or (b) disclosing or sharing Confidential Information of Franklin with Defendant DIRTT;

(3)   Awarding such other and further relief as this Court decides is just and proper under the circumstances.

## COUNT II

## BREACH OF CONTRACT – CLAIM FOR DAMAGES

*Franklin Interiors, Inc. v. Peter M. Wesolosky*

45.   Franklin hereby incorporates the allegations set forth in Paragraphs 1 through 44 of this Complaint as if the same were set forth more fully at length herein.

46.   On or about October 10, 2011, Franklin and Defendant Wesolosky entered into a written contract or employment agreement (hereinafter referred to as "the Agreement"), under which Franklin agreed to employ and pay Wesolosky in return for Wesolosky's agreement to abide by the mutual promises and covenants set forth in the terms of the Agreement.

47.   As part of the terms of the Non-Competition and Confidentiality provisions in the Agreement, Wesolosky expressly agreed that for a period of two-years immediately following the termination of the Agreement, Wesolosky would not directly or indirectly compete with Franklin or disclose Confidential Information of Franklin (*See* ¶¶2-3 of Exhibit "1").

48.   Upon information and belief, following Wesolosky's voluntary termination of his employment with Franklin on September 4, 2020, Wesolosky engaged in on or more of the following acts: (1) Wesolosky accepted a position with Defendant DIRTT or solicited business from clients or potential customers of Franklin on behalf of DIRTT; (2) Wesolosky engaged in or contributed his knowledge and abilities to a

16

business or entity in competition with Plaintiff in the Tri-state region; (3) Wesolosky attempted to solicit from customers business of the type performed by Franklin, or to persuade Franklin's customers to cease doing business with Franklin, or to reduce the amount of business they customarily do with Franklin; and/or (4) Wesolosky disclosed or shared Confidential Information of Franklin with Defendant DIRTT or other third parties.

49.    Wesolosky's acceptance of a position with DIRTT, his competition with Franklin or solicitation and/or acceptance of business from current, former or future customers of Franklin following his termination of employment with Franklin and/or disclosure of Confidential Information of Franklin, as set forth in the preceding Paragraphs, is a violation of the Non-Competition and Confidentiality Provisions in the Agreement and constituted a material breach of the term of the Agreement (*See* ¶¶2-3 of Exhibit "1").

50.    As a direct and proximate result of Defendant Wesolosky's breaches, Franklin has suffered or in the future will suffer monetary losses and damages due to customers or clients placing orders or purchasing architectural wall products from other suppliers/venders.

WHEREFORE, Plaintiff, Franklin Interiors, Inc., respectfully requests that this Honorable Court find in its favor and against Defendant Peter M. Wesolosky, in an amount in excess of the jurisdictional limit of $75,000.00, together with interest, costs and such other and further relief as this Honorable Court deems just and proper.

315526,10765.0

## COUNT III

### TORTIOUS INTERFERENCE WITH EMPLOYMENT AGREEMENT

*Franklin Interiors, Inc. v. DIRTT Environmental Solutions Inc.*

51.     Franklin hereby incorporates the allegations set forth in Paragraphs 1 through 50 of this Complaint as if the same were set forth more fully at length herein.

52.     On or about October 10, 2011, Franklin and Defendant Wesolosky entered into a written contract or employment agreement (hereinafter referred to as "the Agreement"), under which Franklin agreed to employ and pay Wesolosky in return for Wesolosky's agreement to abide by the mutual promises and covenants set forth in the terms of the Agreement.

53.     Included as part of the terms of the Non-Competition and Confidentiality provisions in the Agreement, were valid covenants under which Wesolosky expressly agreed that for a period of two-years immediately following the termination of the Agreement, Wesolosky would not directly or indirectly compete with Franklin or disclose Confidential Information of Franklin (*See* ¶¶2-3 of Exhibit "1").

54.     Defendant DIRTT was made aware of the existence of the Agreement and Wesolosky's covenants not to compete or to disclose Confidential Information through a letter from Franklin's counsel dated September 3, 2020, which: (1) advised Defendant DIRTT of the terms of Defendant Wesolosky's Employment Agreement, including, specifically, the Non-compete provisions; (2) advised DIRTT that Franklin would not waive the Non-Competition Provision contained the Agreement or otherwise agree that Wesolosky could compete with Franklin during the subsequent two year period of time (9/04/20 – 9/04/22) following the termination of his employment with Franklin and (3)

18

demanded that Defendant DIRTT cease and desist with its attempts to hire Defendant Wesolosky.

55.     Despite its receipt of Franklin's September 3, 2020 letter and being advised that Franklin would not waive the Non-Competition Provision contained the Agreement or otherwise agree that Wesolosky could compete with Franklin during the subsequent two year period of time (9/04/20 – 9/04/22) following the termination of his employment with Franklin, Defendant DIRTT willfully and intentionally interfered with the Employment Agreement between Franklin and Wesolosky and Franklin's existing and prospective contractual relations with its customers by hiring Wesolosky and/or by directing him to compete with Franklin, to solicit business from Franklin's existing or potential customers and/or to persuade Franklin's customers to cancel existing orders and place new orders for the same or similar product with Defendant DIRTT.

56.     As a direct and proximate result of Defendant Wesolosky's breaches, Franklin has suffered monetary losses and damages due to customers or potential clients placing orders or purchasing architectural wall products from other suppliers/venders.

WHEREFORE, Plaintiff, Franklin Interiors, Inc., respectfully requests that this Honorable Court find in its favor and against Defendant, DIRTT Environmental Solutions, Inc., in an amount in excess of the jurisdictional limit of $75,000.00, together with interest, costs and such other and further relief as this Honorable Court deems just and proper.

315526,10765.0

## COUNT IV

## CLAIM FOR INJUNCTIVE RELIEF

*Franklin Interiors, Inc. v. Peter M. Wesolosky and
DIRTT Environmental Solutions Inc.*

57.     Franklin hereby incorporates the allegations set forth in Paragraphs 1
through 56 of this Complaint as if the same were set forth more fully at length herein.

58.     On or about October 10, 2011, Franklin and Defendant Wesolosky entered
into a written contract or employment agreement (hereinafter referred to as "the
Agreement"), under which Franklin agreed to employ and pay Wesolosky in return for
Wesolosky's agreement to abide by the mutual promises and covenants set forth in the
terms of that agreement.

59.     As part of the terms of the Non-Competition and Confidentiality
provisions in the Agreement, Wesolosky expressly agreed that:

    a.  for a period of two-years immediately following the termination of the
Agreement, Wesolosky would not directly or indirectly compete with
Franklin;

    b.  for a period of two -years immediately following the termination of the
Agreement, Wesolosky would not disclose to any person, firm or
corporation any Confidential Information of Franklin or any other
proprietary information relating to the practice, operations or business
of Franklin.

(*See* ¶¶2-3 of Exhibit "1")

60.     Pursuant to Paragraph 5 of the Agreement, Wesolosky expressly agreed
that the consequences of any violation of the Agreement are not capable of being fully

315526,10765.0

compensated by money damages and that Franklin shall be entitled to preliminary and permanent injunctive relief if he violates the terms of this Agreement (*See* ¶5 of Exhibit "1").

61.     Shortly before or following Wesolosky's voluntary termination of his employment with Franklin on September 4, 2020, Wesolosky materially breached the terms of the Agreement by: (1) accepting a position with Defendant DIRTT and/or by attempting to solicit business from current, former or potential future customers of Franklin of DIRTT's behalf; (2) engaging in or contributing his knowledge and abilities to a business or entity in competition with Plaintiff in the Tri-state region; and/or (3) disclosing or sharing Confidential Information of Franklin with Defendant DIRTT.

62.     The aforesaid acts by Defendants Wesolosky and DIRTT did not occur in good faith; constitute willful misconduct by Wesolosky and DIRTT; and constitute Wesolosky's failure to perform the promises and covenants set forth in the terms of the Agreement.

63.     The aforesaid acts by Defendants Wesolosky and DIRTT have injured caused irreparable harm to Franklin by depriving it of rights to which it was entitled under the Agreement and by otherwise causing Franklin to lose business and opportunities to perform work.

64.     Although repeated demands have been made, Defendants Wesolosky and DIRTT have willfully refused to comply with the promises and covenants set forth in the terms of the Agreement and Wesolosky continues to breach the Non-Competition and Confidentiality provisions in the Agreement by: (1) accepting a position with Defendant DIRTT; (2) engaging in or contributing his knowledge and abilities to a business or

entity in competition with Franklin in the Tri-state region; (3) by soliciting business from current, former and potential future customers of Franklin; and/or (4) disclosing or sharing Confidential Information of Franklin with Defendant DIRTT.

65.     Thus, Franklin does not have an adequate remedy at law under the circumstances contained herein, and Franklin will suffer irreparable harm and injury if Wesolosky's and DIRTT's willful violation of the Agreement is not prevented.

66.     Upon information and belief, unless this Honorable Court acts, Wesolosky will continue to willfully refuse to comply with the promises and covenants set forth in the terms of the Agreement and it continue to breach the terms of the Agreement by : (1) accepting apposition with Defendant DIRTT; (2) engaging in or contributing his knowledge and abilities to a business or entity in competition with Franklin in the Tri-state region; (3) soliciting business from current, former and potential future customers of Franklin; and/or (4) disclosing or sharing Confidential Information of Franklin with Defendant DIRTT.

67.     Franklin is, therefore, entitled to and justice requires that this Honorable Court enter an order preventing Defendants' willful violation of the terms of the Agreement and enjoining Defendant Wesolosky from: (1) accepting a position with Defendant DIRTT; (2) engaging in or contributing his knowledge and abilities to a business or entity in competition with Franklin in the Tri-state region; (3) soliciting business from current, former and potential future customers of Franklin; and/or (4) disclosing or sharing Confidential Information of Franklin with Defendant DIRTT.

68.     Due to the potential for immediate and irreparable harm if Wesolosky accepts a position with Defendant DIRTT and contributes his knowledge and abilities to

a business or entity that is in competition with Franklin or discloses or shares Confidential Information of Franklin with Defendant DIRTT, Franklin is, therefore, entitled to and justice requires that this Honorable Court enter orders:

    a. Temporarily restraining and enjoining: (a) DIRTT from hiring or employing Defendant Peter M. Wesolosky, and (b) Wesolosky from breaching the terms of his employment agreement with Franklin by: (i) accepting a  position with DIRTT or from continuing to work with DIRTT; (ii) accepting or seeking employment with a competitor of Franklin; (iii) using any of the information acquired by Wesolosky from Franklin, or imparted to Wesolosky during the course of his employment with Franklin; and/or (iv) from disclosing any of this information to any other persons whomsoever, including, but not limited to DIRTT, Franklin's competitors and the general public, pending a hearing and the determination on Franklin's request for a Preliminary Injunction[1]; and

    b. Preliminarily enjoining: (a) DIRTT from hiring or employing Defendant Peter M. Wesolosky, and (b) Wesolosky from breaching the terms of his employment agreement with Franklin by: (i) accepting a position with DIRTT or from continuing to work with DIRTT; (ii) accepting or seeking employment with a competitor of Franklin; (iii) using any of the information acquired by Wesolosky from Franklin, or imparted to Wesolosky during the course of his  employment with Franklin; and/or (iv) from disclosing any of this information to any other persons whomsoever, including, but not limited to DIRTT, Franklin's competitors and the general public, pending the trial or final

---

[1] Contemporaneously or shortly after the filing of this Complaint, Franklin filed or will file a Motion for a Temporary Restraining Order and a Motion for a Preliminary Injunction.

315526,10765.0

hearing and determination on the merits of Franklin's request for injunctive relief.

WHEREFORE, Plaintiff, Franklin Interiors, Inc., respectfully requests that this Honorable Court issue an appropriate Order in its favor and against Defendants, Peter M. Wesolosky and DIRTT Environmental Solutions, Inc., providing the following relief:

(1) Temporarily restraining and enjoining: (a) DIRTT from hiring or employing Defendant Peter M. Wesolosky, and (b) Wesolosky from breaching the terms of his employment agreement with Franklin by: (i) accepting a position with DIRTT or from continuing to work with DIRTT; (ii) accepting or seeking employment with a competitor of Franklin; (iii) using any of the information acquired by Wesolosky from Franklin, or imparted to Wesolosky during the course of his employment with Franklin; and/or (iv) from disclosing any of this information to any other persons whomsoever, including, but not limited to DIRTT, Franklin's competitors and the general public, pending a hearing and the determination on Franklin's request for a Preliminary Injunction;

(2) Preliminarily enjoining: (a) DIRTT from hiring or employing Defendant Peter M. Wesolosky, and (b) Wesolosky from breaching the terms of his employment agreement with Franklin by: (i) accepting a position with DIRTT or from continuing to work with DIRTT; (ii) accepting or seeking employment with a competitor of Franklin; (iii) using any of the information acquired by Wesolosky from Franklin, or imparted to Wesolosky during the course of his employment with Franklin; and/or (iv) from disclosing any of this information to any other persons whomsoever, including, but not limited to DIRTT, Franklin's

competitors and the general public, pending the trial or final hearing and determination on the merits of Franklin's request for injunctive relief.

(3) Declaring that Wesolosky breached the terms of the Agreement by accepting a position with DIRTT Environmental Solutions, Inc., and by soliciting business from current, former and potential future customers of Franklin;

(4) Declaring that Wesolosky breached the terms of the Agreement by engaging in or contributing his knowledge and abilities to a business or entity in competition with Franklin in the Tri-state region;

(5) Declaring that Wesolosky breached the terms of the Agreement by disclosing or sharing Confidential Information of Franklin with Defendant DIRTT Environmental Solutions, Inc.;

(6) Permanently enjoining Wesolosky for a two-year period from accepting a position with DIRTT Environmental Solutions, Inc.;

(7) Permanently enjoining Wesolosky for a two-year period from requesting that any client of Franklin curtail or cancel, or attempt to curtail or cancel, its present or future business relations with Franklin, pursuant to the requirements of the Non-Competition Provision of the Agreement;

(8) Permanently enjoining Wesolosky for a two-year period from soliciting business from clients of Franklin for a two-year period in violation of the requirements of the Non-Competition Provision of the Agreement;

(9) Permanently enjoining Wesolosky for a two-year period from accepting any business from a client of Franklin in violation of the requirements of the Non-Competition Provision of the Agreement;

315526,10765.0

(10) Permanently enjoining Wesolosky from disclosing or using any confidential information or trade secrets of Franklin pursuant to the requirements of the Confidentiality Provision of the Agreement;

(11) Directing Wesolosky to immediately return and deliver to Franklin any and all confidential information and trade secrets of Franklin currently in the possession, custody or control of Wesolosky;

(12) Requiring DIRTT Environmental Solutions, Inc. to provide to Franklin an accounting of all payments and other income that it received, or may receive in the future, from: (a) the work or efforts of Wesolosky; and (2) any source by using confidential information or trade secrets of Franklin;

(13) Imposing a constructive trust on any and all payments and/or other income that DIRTT and Wesolosky received, or may receive in the future, from: (a) the work or efforts of Wesolosky; and (2) any source by using confidential information or trade secrets of Franklin;

(14) Directing Wesolosky to comply with and otherwise perform his obligations to the Franklin under the Agreement; and

(15) Granting such other relief as the Court deems just and proper.

## COUNT V

### CLAIM FOR AN ACCOUNTING

*Franklin Interiors, Inc. v. Peter M. Wesolosky and*
*DIRTT Environmental Solutions Inc.*

69.    Franklin hereby incorporates the allegations set forth in Paragraphs 1 through 68 of this Complaint as if the same were set forth more fully at length herein.

70.     On or about October 10, 2011, Franklin and Defendant entered into a written contract or employment agreement (hereinafter referred to as "the Agreement"), under which Franklin agreed to employ and pay Wesolosky in return for Wesolosky's agreement to abide by the mutual promises and covenants set forth in the terms of that agreement.

71.     As part of the terms of the Non-Competition, Non-Solicitation and Confidentiality provisions in the Agreement, Wesolosky expressly agreed that:

    a.   for a period of two-years immediately following the termination of the Agreement, Wesolosky would not directly or indirectly compete with Franklin;

    b.   for a period of two -years immediately following the termination of the Agreement, Wesolosky would not disclose to any person, firm or corporation any Confidential Information of Franklin or any other proprietary information relating to the practice, operations or business of Franklin.

(*See* ¶¶2-3 of Exhibit "1")

72.     As part of the Agreement, Wesolosky also expressly agreed that, in the event that he violated the requirements of the Agreement, Franklin would be entitled to an equitable accounting of all earnings, profits, and other benefits arising from the violation of this Agreement (See ¶5 of Exhibit "1").

73.     In reliance upon the promises and covenants contained in the Agreement, Franklin entrusted Wesolosky with the Confidential Information and certain confidential and proprietary business information and trade secrets of Franklin while Wesolosky was

27

employed by Franklin including, but not limited to, the following (hereinafter the "Confidential Information"):

    a.   Client lists;

    b.   Client contact information;

    c.   Vendor and supplier contact information;

    d.   Customer lists and information;

    e.   Prospective customer lists and information;

    f.   Franklin's sales and marketing plans and efforts.

    g.   Sales methods and tactics of Franklin;

    h.   Pricing information of Franklin and its suppliers;

    i.   Franklin's Plaintiff's cost structure, including costs of goods sold, overhead costs and discount and rebate programs with vendors;

    j.   Prior and pending proposals and bids,

    k.   Technical and specification information and other records relating to Franklin's and its supplier's products,

    l.   Planning data;

    m.   Financial information and business systems data, compilations of information; and

    n.   Other technical, financial and business information of Franklin Interiors of a confidential and proprietary character.

315526,10765.0

74.     Shortly before or following Wesolosky's voluntary termination of his employment with Franklin on September 4, 2020, Wesolosky materially breached the terms of the Agreement by: (1) accepting a position with a direct competitor DIRTT and/or by attempting to solicit business from current, former or potential future customers of Franklin of DIRTT's behalf; (2) engaging in or contributing his knowledge and abilities to a business or entity in competition with Franklin in the Tri-state region; (3) soliciting business from current, former and potential future customers of Franklin; and/or (4) disclosing or sharing Confidential Information of Franklin with Defendant DIRTT.

75.     The aforesaid acts by Wesolosky did not occur in good faith; constitute willful misconduct by Wesolosky; and constitute Wesolosky's failure to perform the promises and covenants set forth in the terms of the Agreement.

76.     The aforesaid acts by Wesolosky have injured caused irreparable harm to Franklin by depriving it of rights to which it was entitled under the Agreement and by otherwise causing Franklin to lose business and opportunities to perform work.

77.     Although repeated demands have been made, Wesolosky has willfully refused to comply with the promises and covenants set forth in the terms of the Agreement and it continues to breach the Non-Competition and Confidentiality provisions in the Agreement by: (1) accepting a position with a direct competitor DIRTT and/or by attempting to solicit business from current, former or potential future customers of Franklin of DIRTT's behalf; (2) engaging in or contributing his knowledge and abilities to a business or entity in competition with Franklin in the Tri-state region; (3) soliciting business from current, former and potential future customers of Franklin;

315526,10765.0

and/or (4) disclosing or sharing Confidential Information of Franklin with Defendant DIRTT..

78. Franklin is unable to determine the exact amount of damages caused by Wesolosky's breach of the Agreement or determine the amount of damages due under the terms of the Agreement without Wesolosky's or DIRTT's disclosure of the identity of all the business or sales that was secured by Wesolosky at the expense of Franklin or from customers, former customers or potential customers of Franklin since Wesolosky resigned or voluntarily terminated his employment with Franklin and accepted a position with DIRTT or began to solicit sales on its behalf.

79. Upon information and belief, unless this Honorable Court acts, Wesolosky and DIRTT will conceal or continue to conceal or refuse to provide complete lists of the business or sales that was secured by Wesolosky at the expense of Franklin or from customers, former customers or potential customers of Franklin since Wesolosky resigned or voluntarily terminated his employment with Franklin and accepted a position with DIRTT or began to solicit sales on its behalf.

80. Thus, Franklin does not have an adequate remedy at law under the circumstances contained herein, and Franklin will suffer irreparable harm and injury if the Court does not compel an accounting.

81. Franklin is therefore entitled to and justice requires that this Honorable Court enter an order compelling an accounting so that the parties can accurately determine the amounts justly due and owing to Franklin as a result of Wesolosky's breach.

315526,10765.0

WHEREFORE, Plaintiff, Franklin Interiors, Inc., respectfully requests that this Honorable Court issue an appropriate Order:

(1)    Declaring that Wesolosky breached the terms of the Agreement by accepting a position with DIRTT Environmental Solutions, Inc., and by soliciting business from current, former and potential future customers of Franklin;

(2)    Declaring that Wesolosky breached the terms of the Agreement by engaging in or contributing his knowledge and abilities to a business or entity in competition with Franklin in the Tri-state region;

(3)    Declaring that Wesolosky breached the terms of the Agreement by disclosing or sharing Confidential Information of Franklin with Defendant DIRTT Environmental Solutions, Inc.;

(4)    Requiring Wesolosky and/or DIRTT to disclose of the identity of all the business or sales that was secured by Wesolosky at the expense of Franklin or from customers, former customers or potential customers of Franklin since Wesolosky resigned or voluntarily terminated his employment with Franklin and accepted a position with DIRTT or began to solicit sales on its behalf;

(5)    Requiring DIRTT to provide to Franklin an accounting of all business, payments and other income that DIRTT received, or may receive in the future, from any source as a result of the efforts of Wesolosky since Wesolosky resigned or voluntarily terminated his employment with Franklin and accepted a position with DIRTT or began to solicit sales on its behalf;

(6)    Appointing an independent, third-party accountant to review DIRTT's records to determine the business or sales that was secured by

31

Wesolosky at the expense of Franklin or from customers, former customers or potential customers of Franklin since Wesolosky resigned or voluntarily terminated his employment with Franklin and accepted a position with DIRTT or began to solicit sales on its behalf;

(7) Granting such other relief as the Court deems just and proper.

Respectfully submitted,

**MAIELLO, BRUNGO & MAIELLO, LLP.**

/s/ *Gary H. Dadamo*

Gary H. Dadamo, Esquire
Steven P. Engel, Esquire
Lawrence J. Maiello, Esquire
Southside Works
424 South 27th Street, Suite #210
Pittsburgh, PA 15203
(412) 242-4400

*Attorneys for Plaintiff, Franklin Interiors, Inc.*

## VERIFICATION

I, Ralph Dallier, on behalf of Franklin Interiors, Inc., hereby certify that the statements in the within Complaint in Civil Action are true and correct to the best of my knowledge, information and belief. This statement and verification is made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false statements, I may be subject to criminal penalties.

9-17-2020

Ralph Dallier, _PRESIDENT_ (add title)